UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |   |
|---|---|---|
| ABE & NAHED, INC., | ) | Civil Action No. |
|  | ) | 18-12425-FDS |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) |  |
|  | ) |  |
| GLOBAL COMPANIES LLC and | ) |  |
| GLOBAL MONTELLO GROUP CORP., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS AND MOTION TO STRIKE

**SAYLOR, J.**

This is an action for declaratory relief arising out of a contract dispute. Plaintiff Abe & Nahed, Inc. ("Sudbury") operates a gas station in Sudbury, Massachusetts. It has leased the property from defendants Global Companies LLC and Global Montello Group Corp. (collectively, "Global") for the last eight years. In October 2018, Global notified Sudbury that it planned to sell its interest in the property to a third-party buyer. Pursuant to Sudbury's franchise agreement, Sudbury had a right of first refusal to purchase the interest. Although Sudbury exercised that right, it also filed suit, alleging that two sections of the sale contract violate the Petroleum Marketing Practices Act ("PMPA"), 15 U.S.C. § 2801 *et seq.*

Global has moved to dismiss the complaint for mootness, lack of standing, and failure to state a claim. It has also moved to strike an affidavit plaintiff attached to its opposition memorandum. For the following reasons, the motion to strike will be granted, and the motion to dismiss will be denied.

I. **Background**

   A. **Factual Background**

The facts are set forth as described in the complaint and attached exhibits.

Sudbury has leased a gas station at 432 Boston Post Road in Sudbury, Massachusetts (the "Property") for approximately 30 years. (Compl. ¶ 1). For the first 22 years, Sudbury leased the Property from ExxonMobil Oil Corporation. (*Id.* ¶ 5). In 2010, ExxonMobil transferred the Property to Global. (*Id.* ¶¶ 5-6, 9). After the transfer, Sudbury entered into a franchise agreement under the PMPA with Global. (*Id.* ¶ 10). The current agreement will expire on July 31, 2019. (*Id.* ¶ 12).

On October 2, 2018, Global delivered a Notice of Nonrenewal to Sudbury stating that it had entered into a Purchase and Sale Agreement to sell the Property to a third party. (*Id.* ¶ 13). The notice further stated that under the PMPA, Sudbury had 45 days (that is, until November 21, 2018), to exercise its right of first refusal to purchase the Property on the same terms and conditions as detailed in the Purchase and Sale Agreement. (Compl. Ex. 1 at 1-2).

Section 18 of the Purchase and Sale Agreement provides the buyer a 90-day period to conduct due diligence. (Compl. ¶ 15). It further provides the buyer up to three additional 30-day extensions of the due diligence period. (*Id.*). However, to exercise each 30-day extension, the buyer must make a non-refundable $5,000 deposit with a title insurance company. (*Id.* ¶ 16).[1] Section 18 also states the following:

> In the event that Buyer is not in any respect satisfied with the results of its due diligence for any reason, then, in Buyer's sole and absolute discretion, at any time during the Due Diligence Period, Buyer may, at Buyer's option, on or before expiration of the Due Diligence Period withdraw from this transaction . . . and the Deposit shall be refunded to the Buyer forthwith.

---

[1] The deposits are refundable if the seller breaches the agreement. (*Id.*).

(Compl. Ex. 1 at 13).

Section 20 of the Purchase and Sale Agreement addresses environmental considerations. (Compl. ¶ 20). Subsection (b) concerns Underground Storage Tanks ("USTs") and specifies that within 120 days of closing, Global shall, at its sole cost and expense, remove all USTs located on the Property. (Compl. Ex. 1 at 17). It further states:

> Should the Buyer determine that the UST Removal Activities should not be completed by Seller or if the Premises, or any portion thereof, is used for the storage, sale, transfer and/or distribution of petroleum products within fifty (50) years of the Closing, Buyer agrees that the petroleum products sold from the Premises shall be supplied by Seller . . . pursuant to Seller's standard form Fuel Supply Agreement . . . with pricing terms and duration mutually agreeable to the parties, acting reasonably.

(*Id.*). In short, Section 20(b) specifies that if the Property is used for the storage or sale of petroleum products at any time over the next 50 years, then the products must be supplied by Global. (*Id.*).

The prospective third-party buyer intended to develop the Property for commercial purposes other than the retail sale of petroleum products. (Compl. ¶ 21). Because Sudbury intends to continue operating the gas station on the Property, Section 20(b) potentially imposes an additional cost on Sudbury that the prospective third-party buyer would not have incurred.

### B. Procedural Background

The complaint in this action was filed on November 20, 2018. It alleges that Section 18 of the Purchase and Sale Agreement renders the contract unenforceable during the due-diligence period such that it is not a *bona fide* offer to sell under the PMPA. (*Id.* ¶ 18). It further alleges that Section 20(b) effectively constitutes a "poison pill" that was inserted into the agreement to deter Sudbury from exercising its right of first refusal and increased the effective purchase price of the Property in violation of the PMPA. (*Id.* ¶¶ 22-24). The complaint seeks declaratory relief

in the form of court orders stating that Sections 18 and 20(b) contravene the PMPA. The parties agree that because Sudbury exercised its right of first refusal on November 21, 2018, any dispute about Section 18 is moot.

Global has moved to dismiss the complaint for mootness and lack of standing under Fed. R. Civ. P. 12(b)(1), and failure to state a claim under Fed. R. Civ. P. 12(b)(6). It has further moved to strike an affidavit the Sudbury submitted in support of its opposition to the motion to dismiss.

## II. Legal Standard

On a motion to dismiss made pursuant to Rule 12(b)(1), "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." *Murphy v. United States*, 45 F.3d 520, 522 (1st Cir. 1995) (quoting *Taber Partners, I v. Merit Builders, Inc.*, 987 F.2d 57, 60 (1st Cir. 1993) (internal quotation marks omitted)). A court "must credit the plaintiff's well-[pleaded] factual allegations and draw all reasonable inferences in the plaintiff's favor." *Merlonghi v. United States*, 620 F.3d 50, 54 (1st Cir. 2010).

On a motion to dismiss made pursuant to Rule 12(b)(6), the court "must assume the truth of all well-plead[ed] facts and give . . . plaintiff the benefit of all reasonable inferences therefrom." *Ruiz v. Bally Total Fitness Holding Corp.*, 496 F.3d 1, 5 (1st Cir. 2007) (citing *Rogan v. Menino*, 175 F.3d 75, 77 (1st Cir. 1999)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gagliardi v. Sullivan*, 513 F.3d 301, 305 (1st Cir. 2008) (quoting *Centro Medico del Turabo, Inc. v. Feliciano de Melecio*, 406 F.3d 1, 6 (1st Cir. 2005)).

### III. Analysis

#### A. Motion to Strike

In its opposition to Global's motion to dismiss, Sudbury attached an affidavit from Antoine Lakkis, the president of Sudbury. Among other things, the affidavit attests that a sales representative from Global refused to provide important terms, including pricing, volume, and duration, of the Fuel Supply Agreement mentioned in Section 20(b) of the Purchase and Sale Agreement. (Lakkis Aff. ¶ 14).

At the motion to dismiss stage, "any consideration of documents not attached to the complaint, or not expressly incorporated therein, is forbidden." *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993). Moreover, the Lakkis affidavit does not fall into one of "narrow exceptions" to this rule, including "documents the authenticity of which are not disputed by the parties," "official public records," "documents central to plaintiffs' claim," and "documents sufficiently referred to in the complaint." *Id.* Therefore, the Court cannot consider the affidavit in addressing the motion to dismiss, and the motion to strike will be granted.

#### B. Mootness

Global first argues that any controversy is moot. "Mootness is a ground which should ordinarily be decided in advance of any determination on the merits." *Am. Civil Liberties Union of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 52 (1st Cir. 2013) (citing

*Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997)). "The doctrine of mootness enforces the mandate that an actual controversy must be extant at all stages of the review, not merely at the time the complaint is filed." *Id.* (internal quotation marks and citations omitted). "Simply stated, a case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Id.* (internal quotation marks and citations omitted). The party invoking the doctrine bears the burden of establishing mootness. *Id.*

Here, Global contends that Sudbury's challenge to Section 20(b) is moot because Sudbury's exercise of the right of first refusal "accomplished the very thing it claims [Section] 20(b) was meant to discourage." (Mem. in Supp. at 8). However, that misunderstands the nature of Sudbury's claim. The complaint does not simply allege that Section 20(b) was meant to deter Sudbury from exercising the right of first refusal. Rather, it contends that the Purchase and Sale Agreement potentially violates the PMPA by forcing Sudbury to pay a higher effective price for the Property. To explore that issue, Sudbury has exercised its options to extend the due-diligence period to the maximum 180 days as permitted under the Purchase and Sale Agreement. That clearly constitutes a live controversy. Accordingly, the motion to dismiss on the basis of mootness will be denied.[2]

C.  **<u>Standing</u>**

Global next argues that Sudbury lacks standing to assert its claims. Article III standing is a prerequisite for subject-matter jurisdiction, and "the plaintiff bears the burden of pleading facts necessary to demonstrate standing." *Hochendoner v. Genzyme Corp.*, 823 F.3d 724, 730 (1st

---

[2] The fact that the complaint seeks declaratory relief does not change the disposition of the motion. "For declaratory relief to withstand a mootness challenge, the facts alleged must 'show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Am. Civil Liberties Union of Mass.*, 705 F.3d at 53-54 (quoting *Preiser v. Newkirk*, 422 U.S. 395, 402 (1975)). For the reasons stated above, those conditions have been met.

Cir. 2016) (citing *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "The heartland of constitutional standing is composed of the familiar amalgam of injury in fact, causation, and redressability." *Id.* at 731 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)). Each element "must be supported in the same way as any other matter on which the plaintiff bears the burden of proof," *Lujan*, 504 U.S. at 561, which here is "the plausibility standard applicable under Rule 12(b)(6)," *Hochendoner*, 823 F.3d at 730.

Global only challenges Sudbury's standing under the "injury in fact" prong. "An injury in fact must be both 'concrete and particularized and accurate or imminent, not conjectural or hypothetical.'" *Van Wagner Bos., LLC v. Davey*, 770 F.3d 33, 37 (1st Cir. 2014) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014)). Global reasons that "[b]y timely exercising its [right of first refusal], plaintiff removed any potential injury in fact or the possibility that the declaratory relief it requested could redress the theoretical injury it described—i.e., the risk that plaintiff would either lose its franchise or be unable to exercise its [right of first refusal]." (Mem. in Supp. at 10). However, that argument suffers from the same flaw as the mootness argument: it myopically views Sudbury's claim as *only* being that the poison-pill provision was intended to deter the exercise of the right of first refusal. Again, the complaint alleges that requiring Sudbury to purchase petroleum products from Global for the next 50 years increases the effective purchase price of the Property as compared to the third-party buyer. That injury, by its terms, outlasts the decision to exercise the right of first refusal and is both "concrete and particularized" and "actual or imminent." Therefore, the motion to dismiss on the basis of standing will be denied.

D.  **Failure to State a Claim**

Finally, Global contends that the complaint fails to state a claim because the Purchase

7

and Sale Agreement fully complies with the PMPA. The PMPA "governs franchise agreements for the sale, consignment, or distribution of motor fuel." *C.K. Smith & Co., Inc. v. Motiva Enters. LLC*, 269 F.3d 70, 73 (1st Cir. 2001). To "level[] the playing field" between franchisees and franchisors, Congress established "minimum standards designed to prevent arbitrary or discriminatory discontinuance of franchise agreements." *Id.* (citing *Chestnut Hill Gulf, Inc. v. Cumberland Farms, Inc.*, 940 F.2d 744, 746 (1st Cir. 1991)). "If a franchisor fails to comply with the [PMPA], the franchisee may maintain a civil action against such franchisor." 15 U.S.C. § 2805(a).

Section 2802 governs when a petroleum franchisor may terminate or decline to renew a franchise agreement with a franchisee. A franchisor may terminate the franchise through a sale of the premises, provided that the sale be in "good faith and in the normal course of business." *See id.* § 2802(b)(3)(D). Moreover, the franchisor must have either:

> (I) made a bona fide offer to sell, transfer, or assign to the franchisee such franchisor's interests in such premises; or
>
> (II) if applicable, offered the franchisee a right of first refusal of at least 45-days duration of an offer, made by another, to purchase such franchisor's interest in such premises.

*Id.* § 2802(b)(3)(D)(iii)(I)-(II). The right of first refusal must be at the same price offered by the third-party buyer. *See Keener v. Exxon Co., USA*, 32 F.3d 127, 130 (4th Cir. 1994). The parties agree that Global, as franchisor, elected to extend to Sudbury a right of first refusal rather than make an independent *bona fide* offer.

Global contends that the Purchase and Sale Agreement does not violate the PMPA because the terms of the agreement are facially identical to the ones offered to the third party. (Mem. in Supp. at 15). Several district courts have held that the franchisor complies with the requirements of Section 2802 when the franchisee accepts the same terms of sale as the third

8

party. *See Lee v. Exxon Co., U.S.A.*, 867 F. Supp. 365, 368 (D.S.C. 1994); *Atlantic Ave. Oil & Gas, Ltd. v. Texaco Ref. & Mktg., Inc.*, 699 F. Supp. 27, 31-32 (E.D.N.Y. 1988).

Here, however, there is a crucial distinction. In cases such as *Keener*, *Lee*, and *Atlantic*, the franchisor offered an unencumbered, outright sale of the premises to the franchisee. Here, by contrast, although the terms of the Purchase and Sale Agreements for Sudbury and the third party were identical, the complaint alleges that Section 20(b) imposes an additional effective cost on Sudbury by requiring it to purchase petroleum products from Global for up to 50 years. The third party, which is not engaged in the petroleum industry, would not be affected by that provision. In order to determine whether Section 20(b) creates a different price term for Sudbury, several questions must be answered about the prospective 50-year supply contract. For example, does Global insert similar or identical provisions in all its Purchase and Sale Agreements with franchisees and/or third parties? And what would the pricing structure be? The development of a factual record is necessary to answer those questions.

This case is analogous to *L.M.P. Serv., Inc. v. Shell Oil Co.*, 128 F. Supp. 2d 287 (D. Md. 2000), in which the defendant franchisor received an offer from a third party to purchase the premises for $1.2 million plus a 10-year gasoline supply agreement. The franchisor then asked the existing franchisee to match that offer, including the supply agreement. However, the court held that "making a supply agreement a term of the offer to sell the premises under § 2802(b)(3)(D)" violates the PMPA by impermissibly "forc[ing] a substantial change in the franchise relationship (conversion to a franchisee-owned property) using a threat of nonrenewal." *Id.* at 290. Because Sudbury could potentially be locked into a supply agreement for 50 years, the same risk is present here.

In any event, the complaint plausibly alleges the existence of a violation of the PMPA.

To hold otherwise would be to vitiate Congress's intent to "level[] the playing field between [franchisees] and their franchisors." *C.K. Smith & Co.*, 269 F.3d at 73. Accordingly, the motion to dismiss for failure to state a claim will be denied.

IV. **Conclusion**

For the foregoing reasons, defendants' motion to strike is GRANTED and defendants' motion to dismiss is DENIED.

**So Ordered.**

Dated: May 28, 2019

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
United States District Judge